IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 20-146 |
| JACOB KOLONIS | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Heidi M. Grogan, Assistant United States Attorney for said District, and respectfully files the following Memorandum in Aid of Sentencing:

Upon consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), the government asks the Court to sentence defendant Jacob Kolonis to the parties' agreed upon sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), as set forth in the plea letter. The United States respectfully submits that a sentence of 20 years' imprisonment is fair, just, and reasonable in this particular case. The government also asks that the Court sentence the Defendant to a significant term of supervised release following his incarceration.

I.   **FACTUAL AND PROCEDURAL CONTEXT**

Jacob Kolonis, the defendant, pleaded guilty to three counts of Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C.

§§ 2251(a) and (e) (Counts 5, 9, and 13 of the Indictment)—all related to his sextortion[1] of three minor victims. As part of his plea agreement, Defendant accepted responsibility for the conduct charged in the remaining counts of the 16-count Indictment (seven counts of Interstate Transmission of an Extortion Communication, in violation of 18 U.S.C. § 875(d); three counts of Receipt and Attempted Receipt of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and three counts of Transfer of Obscene Material to a Minor, in violation of /18 U.S.C. § 1470). The egregious nature of the Defendant's offenses are well known to the Court and extensively detailed in the Presentence Investigative Report ("PSIR"). Doc. No. 80 at ¶¶ 15-22; *see also* Doc. No. 36 at 2-3 (Government's Brief in Support of Appeal from Order of Pretrial Release), relevant portions incorporated by reference herein, as if fully set forth herein. In sum, since at least August 2019 until February 2020, the Defendant sextorted or attempted to sextort dozens of minors online for his own sexual gratification.

## II.   CONSIDERATION OF THE 3553(a) FACTORS

The Court is required to give "meaningful consideration" to all of the relevant Section 3553(a) factors. *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors

---

[1] "Sextortion"—a term that combines the words "sex" and "extortion"—is the word now commonly used to describe the online exploitation of an individual, often a child, where the offender uses non-physical forms of coercion, such as blackmail, to acquire sexual content (images/videos), engage in sex, or obtain money from another person against his or her will. *See* National Center for Missing and Exploited Children (NCMEC), https://www.missingkids.org/theissues/sextortion#:~:text=NCMEC's%20CyberTipline%20receives%20reports%20regarding,with%20the%20child%2C%20or%20obtain (last visited July 27, 2022).

into account in imposing sentence. *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper*, *supra*, 437 F.3d 329.

The government submits that the serious and disturbing factors of this case warrant a sentence of 20 years' imprisonment, as agreed upon by the parties. Such a sentence also sufficiently accounts for each of the Sections 3553(a) factors, discussed below.

### a. The Nature and Circumstances of the Offense (§ 3553(a)(1))[2]

It is beyond dispute that the sexual exploitation of minors is a very serious crime. "[C]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (citation omitted). "As a general matter, the prohibition of child pornography derives from a legislative judgment that such materials are harmful to the physiological, emotional, and mental health of children, and that preventing the sexual exploitation of this uniquely vulnerable group 'constitutes a government objective of surpassing importance.'" *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 229 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 757–58 (1982)). Using children to produce graphic, sexual images is a form of sexual abuse which can cause mental and physical harm to a child. *United States v. Champion*, 248 F.2d 502, 506 (6th Cir. 2001). Because the material constitutes "a permanent record," the damage to child victims extends far beyond the exploitation depicted and is "exacerbated by . . . circulation [of the material]." *New York v. Ferber*, 458 U.S. 747, 759 (1982).

The government underscores that this is not a case of "mere" possession or receipt of pre-existing child sexual abuse material (child pornography). Here, the Defendant directly engaged

---

[2] *See* Doc. No. 36 at 7-10 (incorporated by reference).

actual minors, a vulnerable group, and threatened them into generating new, sexually explicit images of themselves and forced them to transmit the material to him through a social media application. The Defendant preyed upon the minors' susceptibility to manipulation, coercing them to participate in their own victimization. The Defendant screen-recorded his sextortion of these minors—the threats and the child sexual abuse. He also saved his threats in the Apple Notes application of his phone to facilitate his ease of dissemination to many victims over social media.

Each of these victims has been and will continue to be impacted by the Defendant's conduct. "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). Physical and sexual trauma and abuse of children, when combined with a psychological element of abuse, is extremely dangerous:

> Psychological maltreatment that occurred alongside physical or sexual abuse has been associated with significantly more severe and far-ranging negative outcomes than when children were sexually and physically abused and not psychologically abused, the study found. Moreover, sexual and physical abuse had to occur at the same time to have the same effect as psychological abuse alone on behavioral issues at school, attachment problems and self-injurious behaviors, the research found.

Childhood Psychological Abuse as Harmful as Sexual or Physical Abuse, American Psychological Ass'n (https://www.americanpsychologicalass.com/uploads/1/4/9/4/14945200/childhood_psychological_abuse_as_harmful_as_sexual_or_physical_abuse.pdf) (last visited July 27, 2022).

Here, the parties' agreed upon sentence accounts for the seriousness of the Defendant's conduct and will justly punish him for his exploitation and abuse of a large number of minors.

### b. History and Characteristics of the Defendant (§ 3553(a)(1))

Born in 1993, the Defendant is currently 29 years old. The Defendant's age, apparent close family relationships, and employment history weigh in his favor, as do certain other personal characteristics of the Defendant detailed in the PSIR at ¶ 70. But of particular concern is the personal characteristics exhibited by the Defendant in this case—the Defendant targeted the most vulnerable members of society for his own sexual gratification, threatening the minors in a way that caused them to give into his abusive demands. The victims were children, whose brains had not fully finished developing and maturing[3], and who did not know that they could refuse the Defendant. Moreover, the Defendant's offenses are by no means isolated instances of breaking the law. Instead, they are part of a pattern of victimization. *See, e.g.,* PSIR at 17; *see also* Doc. No. 36 at 10 (analysis of the Defendant's cell phone revealed additional, unidentified victims). These characteristics of the Defendant weigh strongly in favor of the parties' agreed-upon sentence.

### c. Seriousness of the Offense, Respect for the Law, Just Punishment (§ 3553(a)(2)(A))

To reflect the seriousness of this crime, those who participate in this evil must be punished severely. "[D]eterring the production of child pornography and protecting the children who are victimized by it" must be given "significant weight at sentencing." *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007). "There can be no keener revelation of a society's soul than the way

---

[3] *See* Patchin, J.W., & Hinduja, S. (2020), Sextortion Among Adolescents: Results From a National Survey of U.S. Youth, *Sexual Abuse*, Vol. 32(1) 30-54 ("Brain development has not necessarily advanced to a degree to equip these youth with the ability to fully control their impulses and desires, especially when it comes to sexual risk-taking (Victor & Hariri, 2016)"), https://journals.sagepub.com/doi/pdf/10.1177/1079063218800469) (last visited July 27, 2022).

in which it treats its children." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010) (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). Here, the sexual abuse material that the Defendant forced the minors to create is extremely graphic, and his threats and demands in the creation of the material were traumatizing. *See* Doc. No. 36, Gov. Exhibit B (generally and at page 12 where the victim told the Defendant: "You're the reason I want to die" and "I want to kill myself because of you why can't you delete everything and leave me alone) and Exhibit C. Indeed, the Defendant's victims have already been subjected to a lifelong scar worse than any punishment the Defendant could now receive.

In particular, the victims of sextortion crimes like Defendant's endure long-lasting harm. "Victims [of sextortion] report feelings of shame, embarrassment, and fear. It is impacting both their online and offline lives—they are losing friends, changing schools, and relocating to new neighborhoods." Thorn, *Sextortion: Summary findings from a 2017 survey of 2,097 survivors*, https://www.thorn.org/wp-content/uploads/2019/12/Sextortion_Wave2Report_121919.pdf (last visited June 15, 2022).[4] "As a result of sextortion, child victims commonly experience[] a range of negative outcomes, including hopelessness, fear, anxiety and depression. Overall, it was indicated in 13% of CyberTipline sextortion reports that the child victim had experienced some type of negative outcome. Of those reports with some type of negative outcome, it was indicated that about 1 in 3 children (31%; 4% of all sextortion reports) had engaged in self-harm, threatened suicide or attempted suicide as a result of the victimization." NCMEC, Trends identified in

---

[4] Thorn is the organization founded in 2012 by actors Ashton Kutcher and Demi More to combat the online sexual abuse of children.

CyberTipline sextortion reports, https://www.missingkids.org/content/dam/missingkids/pdfs/ncmec-analysis/sextortionfactsheet.pdf(last visited July 28, 2022); *see e.g.,* Patricia Davis, NCMEC, Sextortion: The Hidden Pandemic (discussing the legacy of Amanda Todd who tragically ended her life in 2012 after spiraling into the depths of depression after her own sextortion experience; the YouTube video Amanda created about her victimization can be found at https://youtu.be/vOHXGNx-E7E), https://www.missingkids.org/blog/2022/sextortion-the-hidden-pandemic) (last visited July 28, 2022).

Given this common impact of sextortion on victims, it is understandable that many of the victims of the Defendant's sextortion have refrained from submitting victim impact statements or even requesting restitution. Many of the victims and their families in this case have expressed to the Office of the U.S. Attorney that they want to put this case behind them and move on.

### d. The Need for Deterrence (§ 3553(a)(2)(B)) and to Protect the Public (§ 3553(a)(2)(C))

Deterring the sexual exploitation of minors must be given significant weight at sentencing—children are the most defenseless members of our society and exploiting a child's innocence by possessing child pornography is an egregious crime. "[T]he deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). Practically speaking, severe criminal penalties for those who commit crimes exploiting children is critical to drying up the market and decreasing demand for material that exploits children. *See Goff*, 501 F.3d at 261 ("deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"). Thus, this factor includes the deterrence of the defendant in

the instant case, as well as those who may consider similar offenses in the future. The sentence in this case must send a loud message to both Jacob Kolonis and potential sexual offenders that severe consequences will result from such heinous acts.

In an age where children spend much of their social lives online, it is important for the sentence in this case to show the community that the sexual exploitation of young people through the Internet and mobile apps will not be tolerated. "Social media is an extension of [13-year-olds'] social lives, a context in which real and meaningful relationships develop and at times take some seriously wrong turns, and is very much integrated with their ongoing daily lives and their offline interactions." Marion K. Underwood & Robert Faris, *#Being Thirteen: Social Media and the Hidden World of Young Adolescents' Peer Culture* (Oct. 13, 2015), https://www.documentcloud.org/documents/2448422-being-13-report.html (last visited July 28, 2022). With greater integration between young people's online and offline lives comes increased risk and susceptibility to Internet- and mobile-based sexual predators like the Defendant.

Unfortunately, the Defendant is not alone in seeking to exploit children sexually through surreptitious messaging apps/social media. There are others who seek to hide behind digital intermediaries that allow them to hide their true identities as they go about manipulating children for their own sexual pleasure and generating child pornography in the process. It is crucial that any meaningful approach to protecting youth from sexual predators include heavy penalties for those who, like the Defendant, choose the ease and anonymity of the Internet and mobile apps as means to the sexual abuse of large numbers of children spread across the country and the globe.

The Defendant has shown that he is the epitome of the type of person from which the public needs to be protected. The Defendant was so clever and manipulative that he was very successful in his criminal exploits. While the Defendant finally accepted responsibility and pleaded guilty, this does not diminish the risk he poses to society.

The Defendant has shown himself willing and capable of going to greater lengths to gratify himself sexually than the typical child pornography producer. The alarming repetitiveness of his conduct should give the Court every reason to doubt that the Defendant will not engage in such exploitive behavior without a strong penalty. Society cannot risk that that the Defendant will once again seek out minors to gratify himself sexually. The lengthy prison sentence agreed upon by the parities assures that the Defendant will be permanently deterred and is necessary to eliminate the grave risk he poses to minors in the community.

   e.  **Need to Avoid Sentencing Disparity (§ 3553(a)(6))**

"Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose . . .the more disparity there will be." *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008). It is the government's position that the sentence recommended by the parties here is appropriate, not unreasonable, minimizes disparities, and is appropriate in light of the factors set forth in Section 3553(a).

**III.   CONCLUSION**

For all of the foregoing reasons, and in consideration of the facts and circumstances of this case, the government respectfully requests that the Court sentence the Defendant to the parties'

agreed upon sentence of 20 years' imprisonment, followed by a significant term of supervised release.  When the Court considers all of the factors enumerated in 18 U.S.C. § 3553(a), it should conclude that the parties' requested sentence is warranted, provides just punishment, and is not greater than necessary to address the Defendant's crimes and the 3553(a) factors.

        Respectfully submitted,

        CINDY K. CHUNG
        United States Attorney

        s/ Heidi M. Grogan
        HEIDI M. GROGAN
        Assistant United States Attorney
        PA ID No. 203184