UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | 2:20-cr-00146-RJC-1 |
| v. | Electronically Filed |
| JACOB KOLONIS, | |
| Defendant | The Honorable Robert J. Colville |

**DEFENDANT'S SENTENCING MEMORANDUM**

AND NOW, comes the Defendant, Jacob Kolonis, by and through his counsel, Kenneth J. Haber, Esquire, and the law firm of Difenderfer, Rothman, Haber and Mancuso, and pursuant to 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Local Rule 32(c)(4), respectfully submits the within Sentencing Memorandum, and, in support thereof, avers as follows:

A. LEGAL PRINCIPLES.

Furthering the trend started by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court restored the tremendous discretion that sentencing courts possessed prior to the promulgation of the Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38 (2007). Sentencing courts are now free from any requirement that they mechanically adhere to the tight strictures of the Guidelines and, importantly, need not even presume that the Guidelines provide an appropriate sentence in a given case. Indeed, the Sentencing Guidelines should act only as the "starting point" and the "initial benchmark" in the sentencing calculus. *Id*. at 49. Sentencing courts must sentence defendants in

1

contemplation of the factors set forth in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. §3553(a).

    **B. APPLICATION OF THE SECTION 3553(A) FACTORS.**

        **i. The nature and circumstances of the offense.**

On July 8, 2020, an indictment was filed in the above-captioned case, charging Mr. Kolonis with Counts One, Two, Three, Four, Seven, Eleven, and Fifteen: Interstate Transmission of an Extortion Communication, 18 U.S.C. § 875(d); Counts Five, Nine, and Thirteen: Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor, 18 U.S.C. §§ 2251(a) and (e); Counts Six, Ten, and Fourteen: Receipt and Attempted Receipt of Material Depicting the Sexual Exploitation of a Minor, 18 U.S.C. §§ 2252(a)(1) and (b)(2); and Counts Eight, Twelve, and Sixteen: Transfer of Obscene Material to a Minor, 18 U.S.C. § 1470. On February 9, 2022, Mr. Kolonis pled guilty to Counts Five, Nine, and Thirteen of the Indictment.

        **ii. The applicable sentencing guidelines.**

This Court is to consider the advisory sentencing guidelines as a starting point in fashioning an appropriate sentence. Based on Mr. Kolonis's offense level and his criminal history, the PSIR's guideline calculation results in an advisory guideline sentence of 360 months of incarceration at each count. However, the parties have agreed to a total combined sentence of 240 months of incarceration, to be followed by a period of supervised release. This Court should sentence Mr. Kolonis below the

advisory guideline range and accept the plea agreement pursuant to Rule 11(c)(1)(C) for the reasons stated below.

### iii. The history and characteristics of the defendant.

Mr. Kolonis, now 29, was born in Memphis, Tennessee to Christos Kolonis and Sharon Cohn. The oldest of three brothers, Jacob was physically well-cared-for as a child, but still experienced great emotional difficulty. Jacob's father, Christos, was verbally and emotionally abusive to both Jacob and Jacob's mother. This abuse affected Jacob not only directly as the target of Christos's behavior, but indirectly as well, as a result of his mother's neglect stemming from her abuse at Christos's hands. This eventually led Jacob's parents to divorce when he was seven years old, at which point the abuse subsided as his contact with his father dwindled. Recently, Jacob has made efforts to repair his relationship with his father.

Despite the difficult circumstances of his youth, Jacob has always excelled academically. He is a 2016 graduate of the University of Memphis, from which he obtained a bachelor's degree in sport and leisure management. In 2017, he obtained a Master of Business Administration and Management from Saint Francis University. At both universities, Jacob volunteered as a student basketball manager. During his time at Saint Francis University, Jacob spent summers with his aunt and uncle, a prominent attorney, who both live and work in Blair County, Pennsylvania.

Despite enjoying academic success, Jacob's social life has left much to be desired. His family describes him as somewhat of a "loner," never having had close friends or romantic relationships. Despite this, he is remembered positively by many

in his life. Almost uniformly, he is thought of by those who know him to be a kind, caring person. (See attached Character Letters, Def.'s Ex. B-Z). His brother Matt recalls that he was "always a compassionate older brother" who was determined to keep his siblings' spirits up during the rough times of their childhood. Def.'s Ex. E. His uncle, Attorney David Halpern of Altoona, Pennsylvania, remembers him enjoying interacting intellectually with others. Def's Ex. C. Overall, Jacob's reputation among those who know him best – his family and friends – is that he is quiet, kind, intelligent, driven, and resilient.

These qualities that Jacob's loved ones see in him have only been made more apparent by Jacob's handling of his current situation. On February 25, 2020, local police executed a search warrant at Jacob's residence in Washington, Pennsylvania. At that time, Jacob was employed by Washington and Jefferson College as an assistant men's basketball coach. The police seized several of Jacob's electronic devices during the execution of the search warrant. Jacob was not arrested at the time of the search and, indeed, several months went by before Jacob was informed that he would be prosecuted.

This timeline is particularly important to understand Jacob. In the summer of 2020 – prior to the commencement of any prosecution in this matter – Jacob voluntarily disclosed to his Aunt Sandra, whom he lived with at the time, that he had a problem and needed help. More specifically, Jacob described that he was suffering from what he perceived to be compulsive sexual behaviors and desperately wanted and needed professional intervention.

With the support of his family, Jacob quickly sought out appropriate medical and psychological treatment to assist him in his effort to get well. Jacob decided to pursue treatment through the inpatient program at the Keystone Center in Chester, Pennsylvania, a nationally recognized center for the treatment of sexually compulsive behaviors, sexual addiction, and trauma. Jacob was initially admitted to the Keystone Center on an inpatient basis on July 15, 2020 – five days before the instant indictment was unsealed and before any warrant for his arrest was issued. Thus, at the time Jacob requested and initiated treatment, he was unaware that any chargers were forthcoming – much less a federal prosecution.

When Jacob learned of the instant prosecution, he was in the process of completing his inpatient treatment at the Keystone Center. Although he had ample opportunity to flee from the opposite side of the state, he did not. To the contrary, he immediately contacted counsel and began making arrangements with Assistant United States Attorney Grogan for his voluntary surrender. Jacob did surrender, without incident, according to the agreed upon plan.

Following his surrender, Jacob proceeded to a lengthy detention hearing before Magistrate Judge Kelly. Judge Kelly carefully considered the evidence presented at the detention hearing and concluded that a combination of conditions would ensure Jacob's appearance for court and the protection of the community. That constellation of conditions included the continuation and completion of treatment at the Keystone Center, to be followed by intensive outpatient treatment in the Western District of Pennsylvania. On August 17, 2020, the government moved for revocation of Judge

Kelly's order of release. Ultimately, on September 3, 2020, this Honorable Court affirmed Judge Kelly's order.

Judge Kelly and Your Honor's belief that a combination of conditions could keep the community safe proved to be correct. In the two years since Jacob's release, he has neither violated the conditions of release nor engaged in new criminal conduct.

Jacob has also closely adhered to his treatment plan. He resumed treatment at the Keystone Center on September 14, 2020, immediately after his release from the Allegheny County Jail. Having successfully completed the inpatient program, he was discharged on October 26, 2020. During his treatment, he showed a "markedly increased understanding" of the relationship between his own traumas and insecurities and his sexual illegal behaviors, and was able to improve his ability to process his issues in a healthier way. Def.'s Ex. A at 8 Ultimately, as a result of his treatment at the Keystone Center, "his chances for a successful recovery are good" if he continues to comply with his treatment and applies the skills he learned there effectively. *Id*. at 8-9. Jacob looks forward to continuing his counseling through the programming offered by the Bureau of Prisons.

> iv. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.**

The parties in this matter have agreed to stipulate to a number of factors relating to the seriousness of the offense, including the offenses to which Mr. Kolonis has agreed to plead guilty and his responsibility for the conduct relating to other

6

charged offenses. The parties have also stipulated and agreed to a sentence of twenty years of imprisonment, to be followed by a term of supervised release of not less than five years, a special assessment to be determined by the Court, and restitution of at least $3,000 to the victims at each count.

Mr. Kolonis respectfully asserts that, in light of his history and characteristics, the agreed-upon period of twenty years of incarceration is more than sufficient to serve the goals and purposes of sentencing. Mr. Kolonis further contends that a period of supervised release longer than five years would be unnecessary for either his own rehabilitation or the protection of the community.

As described above, Mr. Kolonis has recognized that he has a problem, and he sought out treatment of his own accord to address it. By his treatment provider's own accounts, Jacob was an active and open participant in his treatment. Def.'s Ex. Further, he has been fully compliant with his aftercare recommendations, along with his conditions of release. He welcomes the opportunity to continue his treatment while incarcerated, and acknowledges that he will need to continue some form of treatment after his release. Finally, Jacob will be in his late forties upon his release from incarceration. His relative maturity at that point, combined with his advanced education and work experience, along with extensive therapy, would allow him to maintain himself better than most upon his return to the community.

A longer period of supervision is also not necessary for the protection of the community due to the fact that Mr. Kolonis will be required to register and comply with the provisions of the Sex Offender Registration and Notification Act, 34 U.S.C.

§ 20901 *et seq*. As a result of the conviction in the instant matter, Mr. Kolonis will be a Tier II offender, who will be required to register with the state in which he resides within three days of his release from incarceration, and must report in-person to verify his residence, employment, and other detailed information every six months. This extensive regimen will serve to monitor Mr. Kolonis for twenty-five years following his release, ensuring that he will not present a threat to the community.

As an additional note, sex offenders on federal community supervision have a lower re-arrest rate than federal prisoners as a whole.[1] There is also less of a decline in their re-offense rates more than five years after their release when compared to the period from their release up to the five-year-mark.[2] Simply put, Mr. Kolonis is at less risk of re-offending than most, and requiring him to serve more than five years of community supervision would not provide any additional rehabilitative benefit or additional safety to the community.

Finally, Mr. Kolonis respectfully requests that this Honorable Court recommend his sentence be served at FCI Elkton in Ohio. It is Mr. Kolonis's belief that the quality of the programming there, as well as the unique characteristics of the facility, would provide him the best opportunity to rehabilitate safely.

---

[1] Joshua A. Markman et al., Bureau of Justice Statistics, *Recidivism of Offenders Placed on Federal Community Supervision in 2005: Patterns from 2005 to 2010*, 6 (June 2016).
[2] R. Karl Hanson et al., *High-Risk Sex Offenders May Not Be High Risk Forever*, 29 J. Interpersonal Violence 2792, 2796-80 (2014).

> **v.     The need to provide restitution to any victims of the offense.**

To date, no demands or requests for restitution have been made to defense counsel. Nonetheless, the parties have stipulated that Mr. Kolonis be required to pay restitution of no less than $3,000 to each victim in this matter. Mr. Kolonis respectfully requests that, due to his extended period of incarceration and his indigent financial status, restitution be limited to no more than $3,000 per victim.

## CONCLUSION

As referenced above and in the numerous attached letters in support of Jacob from his family and friends, Jacob is an intelligent, kind, driven individual who let his internal demons lead him astray. He takes full responsibility for the harm he has caused, both to the victims themselves and their families. Jacob has been proactive in addressing the issues that led him to commit the instant offenses by seeking treatment prior to and subsequent to his indictment, and he has every intention of continuing that treatment during his incarceration and after his release. For all of the reasons stated herein, Mr. Kolonis respectfully requests that this Honorable Court impose the agreed-upon sentence of twenty years imprisonment, to be followed by five years of supervised release. This sentence is no greater than is necessary to reflect the seriousness of the offenses and ensure Mr. Kolonis is not a danger to the community, while still providing sufficient if not severe punishment.

Respectfully submitted,

*Kenneth J. Haber*
KENNETH J. HABER, ESQUIRE
PA I.D. No. 65968
DIFENDERFER, ROTHMAN,
HABER & MANCUSO
304 Ross Street, Suite 400
Pittsburgh, PA 15219
(412) 338-9990
(412) 338-9993 Fax

Attorney for Jacob Kolonis

**Dated:**  July 28, 2022